IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

JACQUELINE BENFORD            PLAINTIFF

V.            NO. 4:19-CV-179-DMB-JMV

MILWAUKEE ELECTRIC TOOL
CORPORATION, et al.            DEFENDANTS

**ORDER**

    Claiming race discrimination and retaliation, Jacqueline Benford sued her employer, Milwaukee Electric Tool Corporation, under Title VII of the Civil Rights Act, and three supervisory employees—Dale Russell, William Hames, and Tim Jenkins—under 42 U.S.C. § 1981. The three employees move to dismiss the § 1981 claims. Because Benford does not allege Russell was causally connected to any actions of which she complains, and does not allege Hames was responsible for any sufficiently adverse employment actions, the claims against them will be dismissed. For similar reasons, the race discrimination claim against Jenkins based on his issuance of a final written warning to Benford, and the retaliation claim against Jenkins based on denied overtime, will be dismissed too. But because Benford has plausibly alleged Jenkins denied her overtime based on her race and issued the final written warning as retaliation for protected activity, such § 1981 claims against Jenkins will proceed.

**I**
**Procedural History**

    On September 23, 2020, Jacqueline Benford, with leave of the Court, filed an amended complaint against Milwaukee Electric Tool Corporation, "Senior Human Resource Manager Dale Russell," "Supervisor William Jason H[a]mes,"[1] and "Cell Manager Tim Jenkins." Doc. #46.

---

[1] The original complaint and the amended complaint both list this defendant as William Jason Homes. The defendants contend the proper name is William Jason Hames, which Benford does not dispute. Doc. #63 at 7 n.1.

The amended complaint contains three counts. Count I asserts a Title VII race discrimination claim against Milwaukee Electric. Count II asserts 42 U.S.C. § 1981 "intentional race discrimination" claims against the individual defendants. And Count III asserts a Title VII hostile work environment claim against Milwaukee Electric.[2]

Additionally, the "Facts" section of the amended complaint alleges that Benford was "retaliated against in violation of Title VII." *Id.* at ¶ 19. The amended complaint does not include a corresponding count for retaliation. However, as a part of the requested relief, it seeks a declaration that the individual defendants "engaged in … retaliation … under 42 U.S.C. § 1981." Doc. #46 at ¶ 41. Thus, the substance of the amended complaint makes clear that Benford intends to assert § 1981 retaliation claims against the individual defendants. *See Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 350 (5th Cir. 1999) (claim asserted in complaint though not expressly pled).

On October 7, 2020, the defendants answered the amended complaint, Doc. #48, and then the individual defendants filed a Rule 12(b)(6) motion to dismiss Count II and the retaliation claim, Doc. #49. The motion is fully briefed. Docs. #50, #63, #64.[3]

## II
## Standard of Review

Where a defendant files a Rule 12(b)(6) motion after filing an answer, the motion should be viewed as a motion for judgment on the pleadings under Rule 12(c). *Triplett v. LeBlanc*, 642 F. App'x 457, 459 (5th Cir. 2016). Generally, "[t]he standard for dismissal under Rule 12(c) is the same as that under Rule 12(b)(6)." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020).

---

[2] Count III was dismissed by this Court on September 24, 2020. Doc. #47 at 6.

[3] Because Benford's initial response addressed the motion to dismiss as a motion for reconsideration, the Court ordered supplemental briefing to allow Benford the opportunity to address the motion on the merits. Doc. #60.

"When a court reviews a motion to dismiss for failure to state a claim under Rule 12(b)(6), it accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 955 (5th Cir. 2020) (internal quotation marks omitted). However, when considering a motion for judgment on the pleadings, a court may also consider the allegations in the answer "to the extent … they have not been denied or do not conflict with [the allegations] of the complaint." *Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956); *see NEPSK, Inc. v. Town of Houlton*, 283 F.3d 1, 8 (1st Cir. 2002) ("[A] Rule 12(c) motion must be filed at the close of pleadings, and must be based solely on the factual allegations in the complaint and answer.").

Claims may be dismissed "on the basis of a dispositive issue of law" or when "the complaint does not contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (internal quotation marks omitted).

> The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Factual allegations that are merely consistent with a defendant's liability, stop short of the line between possibility and plausibility of entitlement to relief, and thus are inadequate.

*Id.* (cleaned up).

### III
### Factual Allegations

On or about August 11, 2003, Milwaukee Tool hired Benford to work as a Blade Operator at its facility in Greenwood, Mississippi. Doc. #46 at ¶¶ 2, 3, 8. Sometime later, Benford was transferred to the position of Machine Operator. *Id.* at ¶ 8. During the time period relevant here, Milwaukee Tool employed Dale Russell as Senior Human Resources Manager, William Jason Hames as a Supervisor, and Tim Jenkins as a Cell Manager. *Id.* Hames, Russell, and Jenkins are white males. *Id.* Benford is an African American woman. *Id.*

3

In late July of 2018, Hames informed Benford that Human Resources Manager Roshanda Hill wanted to meet with her. *Id.* at ¶¶ 9, 13. During her meeting with Hill, Benford complained that (1) Jenkins allowed Benford only two days of overtime but allowed Samantha Taylor, a white employee, to work "as much overtime as she desired," *id.* at ¶ 10; (2) two other white employees—Monica Hood and Morgan Day—would smoke outside during their shifts, *id.* at ¶ 11; (3) Day "conducted repairs on Taylor's vehicle during their work shift," *id.*; and (4) unnamed white "employees occasionally were clearly intoxicated during their work shift, verbally assaulted other employees, and were sleep [sic] during their shift," *id.* at ¶ 12. Benford told Hill that Jenkins and Hames "were aware" of these issues. *Id.*

Approximately three weeks after meeting with Hill, on August 16, 2018, Benford received "an unwarranted 'write-up'" from Jenkins. *Id.* at ¶ 13. Additionally, "[t]hroughout the year of 2018, [Benford] received a number of retaliatory and unjust disciplinary actions against her for her reports to Hill." *Id.* at ¶ 14.

On February 1, 2019, Benford filed a charge of employment discrimination with the Equal Employment Opportunity Commission. *Id.* at ¶ 20. Thirteen days later, on February 14 at approximately 6:55 a.m., Jenkins "exited his office and stood in the doorway near [Benford's] workstation." *Id.* at ¶ 14. Five minutes later, an African American material handler with Milwaukee Tool, who had earlier asked Benford to bring him pizza rolls and a pack of cigarettes, "stopped by" Benford's workstation. *Id.* After Benford gave the material handler a bag with his requested items, the material handler left Benford's workstation. *Id.* Jenkins followed the material handler and photographed the contents of the bag. *Id.*

At 11:18 a.m. that day, Hames, at Jenkins' behest, approached Benford's workstation and asked Benford why she ordinarily leaves for lunch at 11:30 a.m. instead of the "regular hour" of 11:00 a.m. *Id.* at ¶ 15. Benford explained to Hames that she had been going to lunch at 11:30

4

"for over a month" because "[i]n an effort to keep the machines running for eight hours, machine operators were taking different lunch hours." *Id.* Although this practice was undertaken with Jenkins' knowledge and approval, Hames directed Benford to return to her normal lunch hour. *Id.* at ¶ 16.

At the end of Benford's shift, Jenkins called Benford to a conference with him and Hames. *Id.* at ¶ 17. During the conference, Jenkins accused Benford of "selling snacks on the job." *Id.* Benford denied the accusation. *Id.* Jenkins told Benford that he would be reporting the infraction to Russell, who was on vacation, and that Benford "would receive disciplinary action." *Id.* at ¶ 18. On or about February 20, 2019, Jenkins "tried to intimidate" the material handler into falsely stating that he purchased the bag from Benford. *Id.*

On February 26, 2019, Benford was issued a disciplinary action in the form of a final written warning for the February 14 incident. Doc. #46 at ¶ 18; Doc. #65-1.[4] The document states that Benford had "been asked to stop selling food and other items on two prior occasions," and warns that failure to stop selling items "will result in disciplinary action or termination of employment." Doc. #65-1. The document appears to have been signed by Jenkins and Robin Evilsizor, who the warning notes had counseled Benford on a prior occasion for the same alleged conduct. *Id.* Benford refused to sign the document but wrote on it, "All that is said I'm doing is untrue." *Id.*

---

[4] In ruling on a motion to dismiss, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2020). Because the disciplinary action is referenced in Benford's amended complaint, *see* Doc. #46 at ¶ 18, is referenced by both parties in the motion to dismiss briefing, and is central to her claims, the Court considers the final written warning, which was submitted in support of the motion to dismiss in a document titled, "Employee Corrective Action Form." *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 247 n.4 (5th Cir. 2017) (considering document which "was not attached to [the] complaint but was instead submitted to the district court as an exhibit to [the] motion to dismiss and then used by [the plaintiff] as an exhibit to his response to the motion to dismiss").

# IV
## Analysis

As mentioned above, the amended complaint includes § 1981 claims against the individual defendants for race discrimination and retaliation. The individual defendants seek dismissal of these claims.

Ordinarily, claims for employment discrimination brought under § 1981 are analyzed under the same framework as claims asserted under Title VII. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *see Wright v. Chevron Phillips Chem. Co., L.P.*, 734 F. App'x 931, 933 n.2 (5th Cir. 2018) ("The analysis under both Title VII and § 1981 is identical."). At the summary judgment stage, a Title VII claim is generally evaluated under the familiar *McDonnell Douglas*[5] framework, under which a court asks whether the plaintiff has established a prima facie case of discrimination, whether the defendant has offered a legitimate, nondiscriminatory reason for the challenged conduct, and whether the plaintiff has established that the proffered reason was pretext for unlawful discrimination. *See Sanders v. Christwood*, 970 F.3d 558, 561–62 (5th Cir. 2020).

However, a plaintiff need not plead "a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Rather, the plaintiff need only "plead sufficient facts on all of the ultimate elements of [an employment discrimination] claim to make his case plausible." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016). Put differently, "the plaintiff's allegations … must plausibly address 'the ultimate question'" of a Title VII claim—"whether a defendant took the adverse employment action against a plaintiff because of his or her protected status" (or in the case of a retaliation claim, whether the defendant took a materially adverse action

---

[5] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

against the plaintiff because of her protected activity). *English v. Perdue*, 777 F. App'x 94, 99 (5th Cir. 2019) (quoting *Raj*, 714 F.3d at 331). To this end, "it can be helpful to reference the *McDonnell Douglas* framework." *Chhim*, 836 F.3d at 470 (footnote omitted); *see Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016) ("[T]he elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim.").

Finally, where, as here, a plaintiff asserts claims against an individual defendant, the plaintiff "must demonstrate some affirmative link to causally connect the actor with the discriminatory action." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000) (internal quotation marks omitted); *see Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (in § 1983 employment discrimination case plaintiff must plead "individual causation."). Under this standard, a plaintiff must show that the defendant "exercise[d] control over employment decisions and [was] personally involved in the complained-of-conduct." *Slater v. Hous. Wire & Cable Co.*, No. 3:19-cv-267, 2021 WL 92911, at *5 (N.D. Miss. Jan. 11, 2021) (collecting cases). Even when a causal connection exists, to be liable, a defendant must have the requisite discriminatory intent. *See McFadden v. Cnty of Monroe*, 672 F. App'x 81, 83 (2d Cir. 2016).

All this is to say that for a plaintiff to assert a claim against an individual defendant under § 1981, the plaintiff must allege facts that plausibly show that the defendant acted with a discriminatory or retaliatory intent and that such acts caused a sufficiently adverse action. These inquiries are informed by the relevant prima facie case for retaliation and race discrimination claims.

Under the *McDonnell Douglas* framework, a prima facie case of retaliation is that the plaintiff "engaged in activity protected by Title VII, that an adverse employment action occurred, and that a causal link existed between the protected activity and adverse action." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) (internal numbering omitted). A prima facie

7

case of race discrimination exists when the plaintiff shows that she "(1) is a member of a protected class, (2) was qualified for the position that she held, (3) was subject to an adverse employment action, and (4) was replaced by someone outside of her protected class or treated less favorably than other similarity-situated employees who were not in her protected class." *Harville v. City of Houston, Miss.*, 945 F.3d 870, 875 (5th Cir. 2019). Where a plaintiff has been disciplined for violating a work rule, as is argued here, the fourth requirement may also be established by showing that no such violation occurred. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995).

### A. Russell

The individual defendants argue that there is no allegation Russell *took any* action against Benford and that, even if he did, there is nothing to suggest he acted with discriminatory or retaliatory intent. Doc. #50 at 11–12. Benford responds that because Jenkins stated Russell "would review the infraction and Plaintiff would receive disciplinary action," she has alleged "an adverse action and supervisory control" to plausibly allege a claim against Russell. Doc. #63 at 8–9.

Even crediting the statement that Russell would "review" the infraction, there is simply no allegation which raises a plausible inference that Russell was causally connected to the adverse employment action at issue—the final written warning. As noted above, the final written warning was signed by two individuals, neither of whom were Russell. In the absence of any allegation causally linking Russell to the disciplinary action, dismissal of the § 1981 claims against him must be granted. *See generally Morrow v. City of Oakland*, 690 F. App'x 517, 519 (9th Cir. 2017) (affirming grant of summary judgment on individual § 1981 claim where defendant "was not involved in [challenged] decisions involving [the plaintiff], and therefore did not act … with discriminatory or retaliatory intent").

8

**B. Hames**

The individual defendants argue the § 1981 claims against Hames must fail because Benford has not plausibly alleged that Hames was personally responsible for an adverse action or otherwise acted with discriminatory or retaliatory intent. Doc. #50 at 10–11. Benford's response is somewhat confusing but seems to argue that Hames was responsible for two discriminatory and retaliatory adverse actions—the changing of her lunch hour and the issuance of the final written warning.[6] Doc. #63 at 7.

As an initial matter, the amended complaint contains no allegations which link Hames to the final written warning. As alleged, Hames was merely present at the February 14 conference during which Jenkins accused Benford of selling items during work. Accordingly, the claims against Hames premised on the final written warning must fail. *See Odogba v. Wisc. Dep't of Just.*, 22 F. Supp. 3d 895, 911 (E.D. Wis. 2014) ("Mere knowledge does not give rise to [individual] liability.").

As for the modification of the lunch hour, the Court agrees with the individual defendants that it is not a sufficiently adverse action to give rise to § 1981 liability. The adversity standards for § 1981 claims are the same as for corresponding Title VII claims. *Williams v. E.I. du Pont de Nemours & Co.*, 180 F. Supp. 3d 451, 458 (M.D. La. 2016). Thus, for disparate treatment claims, the wrongful act must rise to the level of an adverse employment action. *Stroy v. Gibson ex rel. Dep't of Vet. Affairs*, 896 F.3d 693, 699 (5th Cir. 2018). "Adverse employment actions are ultimate employment decisions such as hiring, firing, demoting, promoting, granting leave, and compensating." *Id.* (quotation marks omitted). For retaliation claims, the action must have been

---

[6] The amended complaint also references certain unspecified "unjust" writeups and disciplinary actions. *See* Doc. #46 at ¶¶ 13–14. These conclusory allegations are insufficient to state a claim. *See Freeman v. Shaker Heights City Sch. Dist.*, No. 1:11-cv-1754, 2011 WL 6012356, at *2 (N.D. Ohio Dec. 1, 2011) ("Title VII prohibits employment discrimination on the basis of race, but plaintiff sets forth only conclusory claims of race discrimination by asserting that she was 'passed over for promotions' and continually harassed with fabricated discipline.").

9

"materially adverse in that it is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015) (cleaned up). "The standard is objective, but the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 945–46 (quotation marks omitted).

"Alteration of [a] Plaintiff's lunch schedule, taken alone, do[es] not rise to the level of an adverse employment action." *Kaur v. N.Y.C. Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 332 (S.D.N.Y. 2010). Accordingly, the change in Benford's lunch schedule cannot support a § 1981 claim for race discrimination. *Id.*

Under the more lenient retaliation standard, a schedule change may be materially adverse when, in context, it would "matter" to the plaintiff, such as where a schedule change would impact the plaintiff's ability to care for her children. *See Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 69 (2006). Thus, for "a change in work schedule to be sufficiently adverse for purposes of plausibly alleging a retaliation claim, there must be some extenuating circumstance, of which the plaintiff alleges her employer was aware, that transforms such a change from merely inconvenient to materially adverse." *Seale v. Madison Cnty.*, 929 F. Supp. 2d 51, 76 (N.D.N.Y. 2013). Because Benford has made no allegation of extenuating circumstances which would suggest that the change in lunch hour would have any adverse impact on her, it follows that this change may not be considered materially adverse. Her retaliation claim premised on this action must fail.

### C. Jenkins

Benford asserts retaliation and race discrimination claims against Jenkins based on the denial of overtime and the allegedly unjustified write-up for the February 14 incident.[7]

---

[7] Doc. #63 at 5–6. Benford also refers to unspecified "write-ups." As explained above, these general allegations are insufficient to state a claim.

1. **Denial of overtime**

In their motion to dismiss, the individual defendants do not challenge whether the denial of overtime is an adverse employment action or a materially adverse action.[8] *See* Doc. #50 at 13. Rather, they argue Benford has failed to plead facts which would support an inference that the denial of overtime was motivated by racial or retaliatory animus.

A plaintiff asserting a retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). However, a plaintiff alleging race discrimination "must show

---

[8] While the individual defendants argue generally that Benford has failed to plead a sufficiently adverse action, the adversity section of their briefing refers only to the disciplinary action, not the denial of overtime. Doc. #64 at 2–3. Although the individual defendants do not contest the issue, it seems unlikely the allegations regarding denial of overtime are sufficiently adverse under either a retaliation or discrimination standard. A denial of overtime may be a materially adverse action for the purpose of a retaliation claim but only when the plaintiff offers an explanation as to "why the denial of these opportunities negatively affected her status, benefits, prestige, or responsibilities." *See Magiera v. City of Dallas*, 389 F. App'x 433, 438 (5th Cir. 2010). Accordingly, a "bare assertion that [a plaintiff] was denied overtime [is] not enough to show that the denial was material." *Ramos v. Performance Contracting, Inc.*, No. 17-2852, 2019 WL 1601783, at *8 (S.D. Tex. Apr. 15, 2019) (citing *Magiera*, 389 F. App'x at 438 and *Sims v. District of Columbia*, 33 F. Supp. 3d 1, 8 n.4 (D.D.C. 2014)).

As for claims for discrimination, there is "no precedential authority in [this] circuit establishing whether a denial of overtime constitutes an adverse employment action." *Brooks v. Firestone Polymers, L.L.C.*, 640 F. App'x 393, 397 (5th Cir. 2016). Unpublished Fifth Circuit authority on the issue is inconsistent. *See id.* at 397 n.7 (collecting cases). Other circuits have concluded that a loss of overtime opportunities may satisfy the adversity requirement but only if the loss is sufficiently adverse. *See Formella v. Brennan*, 817 F.3d 503, 511 (7th Cir. 2016) ("When overtime pay … is a significant and expected part of an employee's annual earnings, denial of such pay may constitute an adverse employment action."); *Collymore v. City of New York*, 767 F. App'x 42, 46 (2d Cir. 2019) ("Since Collymore has not pled that she was denied overtime frequently enough to constitute a change in the terms and conditions of her employment, … her claims of race discrimination fail."); *Stewart v. Union Cnty. Bd. of Educ.*, 655 F. App'x 151, 158 (3d Cir. 2016) (determining adversity based on amount of overtime lost); *Hall v. DeKalb Cnty. Gov't*, 503 F. App'x 781, 789 (11th Cir. 2013) ("[T]he district court properly found that Hall and Jackson consistently received overtime and comp time benefits, and the occasional denial of additional benefits did not constitute a serious and material change in their employment."). The focus on the amount of the loss is consistent with Fifth Circuit authority that a de minimis loss of pay does not rise to the level of an adverse employment action. *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see Badii v. Rick's Cabaret Int'l, Inc.*, No. 3:12-CV-4541, 2014 WL 550593, at *8 (N.D. Tex. Feb. 11, 2014) (collecting cases for the proposition that de minimis loss of pay is not adverse employment action). Consistent with the authority above, the Court concludes that for a loss in overtime opportunities to be an adverse employment action, such loss must result in more than a de minimis loss in pay. Such a determination necessarily depends on the amount of the overtime denied and the amount of the plaintiff's compensation otherwise. *See Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001) ("[I]n light of her annual salary of $20,924.97, the $57-per-month pay increase is not, … de minimis.") (quotation marks omitted), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Benford's amended complaint contains no allegations related to the amount of her salary or the amount of the overtime she was allegedly denied.

11

only that the employer's discriminatory motive was a motivating factor for [the] adverse employment action." *Id.* (quotation marks omitted).

With respect to the claim for retaliation, Benford cannot establish retaliatory animus on the part of Jenkins because the alleged denial of overtime occurred before she engaged in her first alleged protected activity—the July 2018 meeting with the human resources manager.[9] *See Watkins v. Tex. Dep't of Crim. Just.*, 269 F. App'x 457, 462 (5th Cir. 2008) ("Any alleged adverse employment actions prior to [protected activity] cannot serve as part of a retaliation claim because there was nothing to retaliate *against*.").

As for Benford's claim for race discrimination, the individual defendants argue that Benford has alleged only a single denial of overtime and does not "allege that overtime work was available or awarded to another employee on any instance in which she specifically requested it." Doc. #50 at 13. Specifically, the individual defendants argue Benford has failed to allege that Taylor, her proposed comparator, was granted overtime in "nearly identical circumstances." *Id.* at 14.

Ordinarily, a plaintiff attempting to establish a prima facie case of discrimination by reference to a similarly situated comparator "must establish that the comparator was treated more favorably than the plaintiff under nearly identical circumstances." *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 410 (5th Cir. 2016). However, "scrutinizing whether [a plaintiff's] fellow employees were really 'similarly situated'" is an inquiry "more suited to the summary judgment phase." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 768 (5th Cir. 2019). So long as the plaintiff pleads facts which "plausibly allege" the existence of a satisfactory comparator, the

---

[9] An employee "engages in protected activity when she complains of an employment practice that she reasonably believes violated Title VII." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 619 (5th Cir. 2020) (quotation marks omitted). Internal complaints of discrimination are protected activities. *See Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013).

12

claim is sufficient. *See Gunaldo v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. 20-154, 2020 WL 4584186, at *8–9 (E.D. La. Aug. 10, 2020) (citing *Cicalese*).

Here, Benford alleges Jenkins allowed a white employee in the same position to work as much overtime as she wanted while Benford was limited to two days. This allegation is sufficient to clear the low bar of Rule 12(b)(6). *See Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016) ("Plaintiff does not specifically identify the national origin or religion of the engineer who plaintiff alleges … received overtime …. However, plaintiff does identify the engineer … by name and he claims that comparators were engineers who were accountable to the same supervisors.").

### 2. February 26 discipline

Finally, Benford asserts race discrimination and retaliation claims based on Jenkins issuing the final written warning for the February 14 incident. The individual defendants argue these claims must fail because Benford "concedes in the Amended Complaint that she engaged in such conduct" and because a statement from the machine handler which was attached to the warning "undermines Benford's allegation that the discipline was pretextual and no money exchanged hands." Doc. #50 at 13. The individual defendants further argue that Benford's allegations "fail to disclose any facts concerning who issued the discipline, when it was issued, the severity of the discipline, or any other information from which a plausible claim could be inferred." *Id.*

The individual defendants are correct that the allegations in the amended complaint regarding the discipline for the alleged February 14 infraction are conclusory and, standing alone, would not raise a plausible inference of an adverse employment action. *See Cherry v. N.Y.C. Hous. Auth.*, No. 15-CV-6949, 2017 WL 4357344, at *18 (E.D.N.Y. Sept. 29, 2017) (collecting cases). However, the amended complaint does not stand alone. As explained above, the Court may consider the final written warning submitted by the defendants in support of their motion to

13

dismiss. This document clarifies who issued the discipline (Jenkins and Evilsizor), when it was issued (February 26), and the form of the discipline (a final written warning). The validity of Benford's claims—that she suffered adverse employment actions based on her race and her protected activities—therefore must be considered in light of these facts.

Final written warnings are not adverse employment actions for the purpose of a discrimination claim. *Espinoza v. San Benito Consol. Indep. Sch. Dist.*, No. 1:14-cv-115, 2016 WL 10734364, at *10 (S.D. Tex. Dec. 30, 2016) (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)). Accordingly, the February 26 discipline may not support Benford's race discrimination claim under § 1981.

However, under the lower materially adverse standard for a retaliation claim, a written warning may qualify as a materially adverse employment action so long as "colorable grounds" do not exist for the disciplinary action and the employee does not continue to engage in protected activity. *See Jackson v. Honeywell Int'l, Inc.*, 601 F. App'x 280, 286 (5th Cir. 2015). While the final written warning here was based on a statement from the machine handler, Benford has alleged that this statement was coerced through intimidation, that she denied the misconduct, and that there was "no evidence that she had sold anything." Doc. #46 at ¶¶ 17–18. Under these circumstances, the Court concludes that Benford has plausibly alleged that the final written warning was unsupported by colorable grounds and that, therefore, the warning may be considered materially adverse for the purpose of her retaliation claim.[10] The question then becomes whether there is a causal link between this warning and any protected activity taken by Benford and if there is, whether Jenkins was personally involved in the conduct.

---

[10] The Court notes that contrary to the defendants' contention, Benford's amended complaint does not "concede" that she engaged in the relevant conduct. The individual defendants merely cite the portion of the amended complaint which alleges that Benford gave the machine handler the bag of items. There is no allegation that she received money for this transaction.

The question of Jenkins' personal involvement is easily answered. Benford alleges that Jenkins coerced and intimidated the material handler to produce the statement on which the warning was based. Furthermore, the warning at issue was signed by Jenkins.

As to the existence of protected activity, there is no dispute that Benford's February 1, 2019, filing of an EEOC charge qualifies as protected under Title VII. *Harville*, 945 F.3d at 879.

As to causation, while temporal proximity between the protected activity and the materially adverse action is often not enough to prove retaliatory animus at the summary judgment stage, for the purpose of deciding a motion to dismiss, "[t]emporal proximity alone may suffice when the acts are separated by weeks." *Garvin v. Sw. Corr., L.L.C.*, 391 F. Supp. 3d 640, 653 (N.D. Tex. 2019). Here, Jenkins accused Benford of misconduct just thirteen days after she filed her EEOC charge of discrimination. The formal written warning followed just twelve days after that. This short temporal proximity easily satisfies the causation element for the purpose of a motion to dismiss. In short, Benford has stated a § 1981 retaliation claim against Jenkins based on the February 26 discipline.

## V
## Conclusion

The employees' motion to dismiss [49] is **GRANTED in Part and DENIED in Part**. The motion is DENIED to the extent it seeks dismissal of Benford's § 1981 claim against Jenkins for race discrimination based on denial of overtime, and to the extent it seeks dismissal of Benford's § 1981 claim against Jenkins for retaliation based on the issuance of the final written warning. The motion is GRANTED in all other respects.

**SO ORDERED**, this 25th day of February, 2021.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

15